# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**CARLANDRIA SHNAA OLIVER**                                                            **PLAINTIFF**

**V.**                                                                                  **No. 4:22-cv-00001-JMV**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*                                **DEFENDANT**

### FINAL JUDGMENT

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding an application for Title II disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. For the following reasons, the Commissioner's decision is affirmed.

    **I.**        **Administrative History**

Plaintiff applied for Title II disability insurance benefits ("DIB") in June 2016, alleging disability since August 7, 2006, due to seizures. Tr. at 374-380, 455. An Administrative Law Judge ("ALJ") issued an unfavorable decision on April 2, 2019. *Id.* at 149-158. On August 7, 2020, the Appeals Council vacated the April 2019 hearing decision and remanded for rehearing due to the presence of conflicting disability determinations for purposes of supplemental security income ("SSI") benefits and DIB. *Id.* at 186-188. As set out in the August 2020 order, Plaintiff was found disabled for purposes of SSI through January 31, 2017, but was found not disabled during the same time period for purposes of DIB in the April 2019 hearing decision. *Id.* at 187. Remand was ordered to resolve the conflicting disability determinations and assess whether collateral estoppel applied to the prior SSI disability determination. *Id.* at 187-88.

The ALJ conducted a hearing on March 8, 2021, at which Plaintiff appeared and testified with the assistance of counsel. *Id.* at 45. Vocational expert ("VE") Bruce Brawner also appeared and testified. *Id.* at 45-46, 592. As found in the ALJ's decision, Plaintiff's insured status for purposes of Title II disability benefits began on July 1, 2015, and expired on September 30, 2019. *Id.* at 24.

After reviewing the evidence and testimony, the ALJ issued a hearing decision on April 1, 2021, finding that collateral estoppel required a finding of disability through January 31, 2017, the date Plaintiff's disability was found to have ended. *Id.* at 24, 144. The ALJ then assessed Plaintiff's disability status after January 31, 2017, applying the disability cessation analysis set forth in the Commissioner's regulations at 20 C.F.R. § 404.1594(f). *Id.* at 24-25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after January 31, 2017. *Id.* at 24. At step two, the ALJ found that, as of January 31, 2017, Plaintiff had the medically determinable impairments of borderline intellectual functioning, depression, anxiety, seizure disorder, asthma, and migraine headaches. *Id.* at 25. At steps three and four, the ALJ found that there had been medical improvement since Plaintiff's last favorable determination on August 1, 2007, and that the improvement was related to her ability to work. *Id.* at 27-29.

Because of the findings at steps three and four, no exceptions at step five were applicable. *See* 20 C.F.R. § 404.1594(f)(5). At step six, the ALJ found that Plaintiff continued to have severe impairments, that her impairments did not meet a listed impairment, and that she retained the residual functional capacity for work at all exertional levels with the following limitations: no climbing ladders, ropes, or scaffolds; no more than occasionally climbing ramps or stairs; no exposure to work hazards or heights; no concentrated exposure to pulmonary irritants such as dust or chemicals; simple and repetitive work tasks; and no work at a "fast production pace." Tr. at 25-

27, 29-33. At step seven, the ALJ found that Plaintiff could not perform any past relevant work. *Id.* at 33. At step eight, the ALJ found that Plaintiff's residual functional capacity and vocational profile would allow performing other work existing in significant numbers in the national economy, as identified by VE Brawner. *Id.* at 34-35, 65-67. Accordingly, the ALJ found that Plaintiff was not disabled and found that her disability status had ended as of January 31, 2017, and that she had not become disabled after that date. *Id.* at 35. On November 8, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final administrative decision. *Id.* at 8-12. Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

As previously noted, Plaintiff's Title II insured status expired on September 30, 2019. *Id.* at 24. The Act is clear that a claimant who becomes disabled after the expiration of her insured status is not entitled to benefits. *See* 42 U.S.C. §§ 416(i)(3), 423(c); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5th Cir. 1981). Thus, to be eligible for post-cessation Title II DIB, Plaintiff must establish that she became disabled on or before September 30, 2019. *See Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) (claimants bear the burden of establishing a disabling condition before the expiration of their insured status).

**II.     Law and Analysis**

Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). "It is more than a mere scintilla, and less than a

preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

**(1) Did the ALJ err with respect to Plaintiff's upper extremity limitations?**

First, the Plaintiff argues that the ALJ erred by omitting upper extremity limitations from her residual functional capacity assessment. *See* Pl.'s Br. at 4-6. As previously noted, the ALJ assessed no exertional limitations. In support of her claim of error, Plaintiff points only to examination findings by consultative examiner Darrell Blaylock, M.D., in October 2016, and her own hearing testimony. *See* Pl.'s Br. at 5-6; Tr. at 63-64, 1010-12. However, as the Commissioner points out, Dr. Blaylock's examination took place during a period of time where Plaintiff was found to be disabled. Tr. at 19-20, 28. The hearing decision at issue before this Court addressed Plaintiff's condition from January 31, 2017, through the expiration of her Title II disability insured status on September 30, 2019. Tr. at 24.

I agree with the Commissioner that Plaintiff has not supported her claim of error regarding alleged upper extremity limitations with references to abnormal clinical findings during the relevant period and a review of these findings documents little in the way of upper extremity impairment or functional limitation. Plaintiff's examinations at the Indianola Family Medical Group (IFMG) on January 12, 2017; February 7, 2017; August 18, 2017; September 6, 2017;

September 26, 2017; December 8, 2017; August 8, 2018; August 15, 2018; August 17, 2018; and August 22, 2018, documented no clinical signs of upper extremity weakness. Tr. at 1013, 1020, 1026, 1032-1032, 1032-1037, 1042-1043, 1048, 1054, 1058-1079. Plaintiff's February 16, 2017; August 23, 2017; June 28, 2018; September 19, 2018; and January 2, 2019, examinations at Greenwood Leflore Hospital similarly showed no medical signs of upper extremity weakness. Tr. at 1133-1134, 1138, 1142, 1590-1591, 1628. Plaintiff's IFMG examinations on September 4, 2018; September 28, 2018; October 30, 2018; August 27, 2019; September 4, 2019; and September 11, 2019, also showed no signs of upper extremity abnormalities, with the exception of reduced deep tendon reflexes noted on September 19, 2018. Tr. 1252, 1256, 1258, 1261-1262, 1282, 1290, 1298. I find no error here.

**(2) Did the ALJ err in his consideration of Plaintiff's migraine headaches?**

Secondly, the Plaintiff argues that she did not experience improvement in her migraine headache symptoms until July 2019 and asserts that her disability should have been found to have continued at least through that date. *See* Pl.'s Br. at 6-7. However, the Commissioner points out that Plaintiff was not initially found to be disabled due to migraine headache symptoms. The basis for the agency's finding of disabled was anoxic encephalopathy with myoclonus, which was found to have met Listing 11.18. Tr. at 25, Finding 5. Plaintiff was not documented to have migraine headaches at the time of the comparison point decision finding her disabled. *Id.* Thus, neither the presence nor absence of migraine headache symptoms is a factor in determining whether Plaintiff has experienced medical improvement in her previously disabling impairment. Tr. at 27, Finding 8; 20 C.F.R. § 404.1594(b)(1) ("Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled").

Regarding the impact of Plaintiff's reported migraine headache symptoms during the relevant period, the ALJ found that they were medically determinable but non-severe, noting that Plaintiff's headaches responded to prescribed medications. Tr. at 29-30; *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (conditions controlled or controllable with treatment are not disabling); *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980). And, Plaintiff's June 28, 2018, treatment report from Greenwood Leflore Hospital notes that Plaintiff described her headache activity as "intermittent" rather than three to four times per week as she had stated at the hearing. Tr. 56, 1131. On July 3, 2019, Plaintiff reported no seizure activity in the last six months, "fair" headaches, and stated that she was doing good. Tr. at 1622. Plaintiff's contemporaneous treatment reports support the ALJ's finding that Plaintiff's headaches responded to treatment and contradicts Plaintiff's hearing testimony describing incapacitating headaches occurring three to four times per week. Tr. at 29-30, 56-57. There is no reversible error.

**(3) Did the ALJ commit reversible error in his consideration of Plaintiff's mental health impairments?**

Plaintiff argues that the ALJ erred by incorrectly noting that Plaintiff had not had any psychiatric hospitalizations during the relevant period. *See* Pl.'s Br. at 8-9; Tr. at 32. However, the Commissioner notes that the record that Plaintiff cites is dated January 19, 2021, well after the September 30, 2019, expiration of Plaintiff's Title II disability insured status. Tr. at 1357-1358. Evidence showing degeneration of a condition after the expiration of a claimant's Title II insured status is not relevant to the Commissioner's Title II disability analysis. *See Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995); *see also Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985) (an impairment that had its onset or became disabling after expiration of insured status cannot serve as a basis for a finding of disability). Accordingly, this argument by Plaintiff is not persuasive.

Plaintiff also argues that the ALJ erred by not accepting the prior administrative findings made by State agency psychological consultant Janice Hinson, Ph.D., on December 24, 2016. *See* Pl.'s Br. at 9; Tr. 121, 124-126. However, the Commissioner notes Dr. Hinson made her findings entirely before the period addressed by the ALJ's findings, and therefore, her findings cannot reflect Plaintiff's functioning during the relevant period, which started on January 31, 2017. The ALJ noted that Dr. Hinson and the other State agency consultants reviewed "the record available to them." Tr. at 32. Dr. Hinson noted that, at that time, Plaintiff was prescribed no psychoactive medications, was working at a part-time job, living alone as a single parent and caring for her child independently, and goes out alone, drives, shops, attends church, socializes frequently with friends and family, and attends social functions. Tr. at 121. Dr. Hinson found that Plaintiff was moderately limited in dealing with detailed instructions, was not limited in dealing with simple instructions, and was moderately limited in maintaining concentration, working around others, and making simple work-related decisions. Tr. at 124-125. Dr. Hinson found that Plaintiff had no social interaction limitations but also stated that Plaintiff "can interact appropriately with coworkers and supervisors on a limited basis." Tr. 125. Plaintiff relies on the latter statement to support her claim of an omitted limitation. *See* Pl.'s Br. at 9.

The ALJ granted no more than "partial weight" to the State agency medical consultants, including Dr. Hinson, noting that they "provided minimal support for their assessment." Tr. at 32. That the ALJ declined to adopt Dr. Hinson's statement regarding interaction "with coworkers and supervisors on a limited basis" is not error given Dr. Hinson's own explicit findings to the contrary regarding Plaintiff's social functioning. Tr. at 32, 125. Plaintiff has shown no error in the ALJ's decision to grant no more than partial weight to Dr. Hinson's opinions.

### (4) Did the ALJ err by failing to properly evaluate if the Plaintiff's borderline intellectual functioning had medically improved?

The Plaintiff also argues that the ALJ failed to properly consider whether her borderline intellectual functioning improved. But, as the Commissioner has explained, the regulations define medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] was disabled." 20 C.F.R. § 404.1594(b)(1).

Here, the ALJ found that Plaintiff had experienced medical improvement in the conditions that led to her initial finding of disability for purposes of SSI benefits: anoxic encephalopathy with myoclonus, which was found to have met Listing 11.18. Tr. at 25, Finding 5; Tr. 27, Finding 8. In support of this finding, the ALJ noted that CT scans of Plaintiff's head in July 2011 showed no acute intracranial pathology, a neurological examination in March 2014 reflected unremarkable findings, and subsequent records also reflected negative medical imaging results and generally normal neurological findings. Tr. at 27-29. Because Plaintiff's condition no longer met a Listing, she was found to have experienced medical improvement related to her ability to work. Tr. at 29; *see* 20 C.F.R. § 404.1594(c)(3)(i) (conditions that no longer meet a listing are presumed to be related to the ability to work).

In short, Plaintiff was not found to be disabled due to an intellectual disability, and no finding of improvement in her intellectual functioning was made, or required to be made, as part of the ALJ's decision. Plaintiff's claim of error premised on a lack of improvement in her intellectual functioning is without merit.

### III. Conclusion

On review here, I find that Plaintiff has demonstrated no reversible error. For the foregoing reasons, the Commissioner's decision is affirmed.

**SO ORDERED**, this the 18th day of August, 2022.

                                                 */s/* Jane M. Virden
                                                 **UNITED STATES MAGISTRATE JUDGE**